GRACIA MARÍA ARRARÁS, ETC., Plaintiffs and Appellants, *v.* JOSÉ MARÍA ARZUAGA, Defendant and Appellee.

No. 7657. Argued June 2, 1938.—Decided July 28, 1938.

*Dexter & Dexter* for appellants. *Gabriel de la Haba* and *Damián Monserrat, Jr.,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Gracia María Arrarás in her complaint substantially alleges that she is the mother with *patria potestas* over the minors, José María, María del Coro, and Manuel Enrique Arzuaga Arrarás, and that the defendant is a resident of San

Sebastián, Spanish Republic; that on March 19, 1925, she was married to Juan B. Arzuaga, a legitimate son of the defendant; that during said marriage she gave birth to the three minor plaintiffs; that the said marriage was dissolved by an order of May 17, 1935, the custody and *patria potestas* over her children being awarded to her; that the said Juan B. Arzuaga left for Venezuela more than a year prior to the rendition of the divorce decree, and from there he went to Spain where he now resides, having completely abandoned her and her children; that the said Juan B. Arzuaga owns no property in Puerto Rico, nor, according to her information and belief, in Spain where he intends to reside permanently; that she lacks the necessary means for supporting and educating the plaintiffs who are already taking courses in private schools in Mayagüez; that the defendant is a very rich man, owning shares of stock and securities in Puerto Rico, and should be compelled to pay a monthly allowance of $100 to each of his grandchildren, making a monthly total of $300, which is a fair and reasonable amount in view of the social standing of the plaintiffs and the wealth of the defendant. The complaint is sworn to by Gracia María Arrarás.

In order to secure the judgment the plaintiffs moved for an attachment, with prohibition to sell, of the following shares of stock of Central Cambalache, Inc., a domestic corporation, which belong to the defendant, having a total par value of $24,520.

```
"    5      shares of stock numbered 425
"   12      shares of stock numbered 729
"    1      share  of stock numbered 431
" 2/10      share  of stock numbered  64
" 227       shares of stock numbered 129
  ────
" 245 2/10 shares of stock."
```

On May 27, 1937, the district court, upon the furnishing of a bond in the sum of $1,000 in favor of the defendant,

decreed "an attachment for the full value on all and each shares of stock in the name of the defendant on the books of Central Cambalache, Inc.," enjoined the sale thereof, and ordered that notice of the attachment be served on the president or official of Central Cambalache, Inc., in charge of the stock books.

On May 27 the plaintiffs furnished the required bond and the clerk of the court *a quo* issued a summons which the marshal returned not served because the defendant resided in Spain and not in Puerto Rico. On the following day the clerk issued the writ of attachment. The marshal's return to this writ reads textually as follows:

"RETURN OF THE MARSHAL.

"I HEREBY CERTIFY: That I received the within writ on May 28, 1937, at 1:30 p.m., and that I served the same on May 28, 1937, at 2:30 p.m., by calling at Central Cambalache, Inc., located in the ward of Cambalache of Arecibo, Puerto Rico, and levying on all and each of the shares of stock that might be registered in the name of the defendant in this case on the books of the said corportaion; that I personally served notice on José Matienzo, President of Central Cambalache, Inc., so that the said official should make the proper notation on the stock books of said corporation, and advised him of the attachment levied in the present case; that I warned him as such president not to enter on the books of said corporation any sale, assignment or transfer of the shares of stock in the said corporation belonging to the defendant herein, unless expressly authorized by the Court; that I left a copy of this writ with him as such president.

"Arecibo, P. R., May 28, 1937.

(Signed) FELIPE CHEVERE,
*Deputy Marshal of the District Court, acting*
*in the place of Tomás Méndez, Marshal.*"

On June 1, the plaintiffs moved for the summoning of the defendant by publication and the motion was granted on June 5. There is evidence to show that the edicts were published on the 7th, 15th, 21st, and 30th of June and on the 7th of July, 1937.

On August 17, 1937, the defendant appeared solely for the purpose of challenging the validity of the service of process by publication and the jurisdiction of the court, and alleged as follows:

"1. That the order of this court of June 5, 1937, directing that the defendant be summoned by publication is void and without any effect for the folowing reasons:

"(a) Because said order was issued upon the verified motion of one of the attorneys for the plaintiffs, which fails to allege meritorious grounds or reasons for the process by publication and the oath thereto is void and of no effect because it is in conflict with the applicable law.

"(b) That the said order directing the service by publication is not supported by an affidavit of merits which must accompany the motion for service by publication.

"(c) That notwithstanding the allegation in the sworn complaint and in the motion for service by publication that the defendant resided in San Sebastián, Spain, the court failed to direct, in its aforesaid order of June 5, 1937, that a copy of the summons and of the complaint be mailed to the defendant at his place of residence, in contravention of the provisions of the Code of Civil Procedure.

"2. That the court did not acquire jurisdiction over the defendant to order that he be summoned by publication, not only by reason of the foregoing allegations but also for the following reasons:

"(a) The attachment levied by the plaintiffs upon the shares of stock which according to the plaintiff the defendant owns in the Central Cambalache, a domestic corporation, is void and ineffective by reason of the failure on the part of the marshal to attach the respective titles of said stock and to take actual possession thereof.

"(b) As it is alleged that the defendant is a resident of the city of San Sebastián, Spain, the situs of said stock certificates, which are considered personal property, is the place of residence of their owner, and therefore no attachment could be levied upon any holdings of the defendant in said corporation, Central Cambalache, owing to the fact that the property sought to be attached was not located in the Island of Puerto Rico.

"(c) The aforesaid attachment levied by the plaintiffs does not lie in an action for maintenance and support where the payments for support which are claimed are not now due nor were they due at the time the attachment was levied, and the property of the person

alleged to be obliged to give support is not subject to any lien to secure prospective payments for support, and therefore his estate can not be subjected, through an attachment, to the performance of obligations which are uncertain, prospective, and not yet due."

On August 20, the plaintiffs filed an affidavit by one of their attorneys in which it was stated that on June 10, 1937, copies of the complaint and of the summons were mailed to the defendant, and on September 13 of the same year there was mailed to the defendant an amendment to the marshal's return upon the writ of attachment, which reads as follows:

"I, Felipe Chévere, Deputy Marshal of the District Court of Arecibo, Puerto Rico,

"CERTIFY: That on May 28, 1937, I issued a certificate of service pursuant to a writ of attachment issued in the above entitled case by the District Court for the Judicial District of San Juan, Puerto Rico on May 28, 1937; that I stated in the said certificate of service that I had attached 'all and each of the stock certificates that might be registered in the name of the defendant on the books of the aforesaid corporation.'

"That I hereby amend the said return made by me adding thereto and also certifying that the above shares of stock attached by me were as follows:

```
"      5     shares of stock numbered 425
"     12     shares of stock numbered 729
"      1     shares of stock numbered 431
"         2/10 shares of stock numbered   64
"    227     shares of stock numbered 129
   ─────────
"    245 2/10 shares of stock certificates."
```

"In witness whereof I subscribe the present amended return made by me in the above entitled case in the city of Arecibo, P. R., on this the 3rd day of September, 1937.

(signed:)    FELIPE CHÉVERE,<br>Deputy Marshal, District Court of Arecibo, P. R."

Finally, on October 8, 1937, the plaintiffs filed an amended complaint in which it was alleged that the maternal grandfather of the minors died about fifteen years previously, leav-

ing property barely sufficient to cover the necessaries of his widow and the three minor children, and that the only property available to the maternal grandmother are some estates subject to mortgages, the income from which, after paying interest and taxes, was only sufficient to meet her expenses and those of the mother and one aunt of the minors.

On November 9, 1937, the lower court made the order which gave rise to the present appeal. It contains a discussion and determination in favor of the plaintiffs of every question raised by the defendant in his motion to set aside the service by publication, *supra*. However, on grounds that were not advanced by the defendant in his motion, the court reached the conclusion that the attachment was ineffectual and that the order directing the service by publication was made without jurisdiction. It therefore set aside the order directing the summons by publication, without prejudice to the levying of a valid attachment, and that after the levy thereof a new motion might be filed for the proper order to summon the defendant by publication. The order in its pertinent part reads as follows:

"Notwithstanding that the court has jurisdiction to make the order of attachment, we must reach the conclusion that the said attachment is ineffective and that any judgment entered by reason thereof would be *coram non judice*.

"When calling at the office of the Central Cambalache, the marshal of the District Court of Arecibo failed first to ascertain whether the defendant owned stock in the said Central and, after establishing the existence of such stock, to levy an attachment on the specific number of shares owned by the defendant. On the contrary, the marshal confined himself to attach any shares stock that might be owned by the defendant, and it was so stated by him on the return of the order of attachment.

"In order that service in such cases could be made by publication it is necessary, according to the jurisprudence, that prior to the making of such an order an attachment be first levied on property of the defendant. *Cosme* v. *Santi*, 37 P.R.R. 710, 713.

"How could the Court determine whether property of the defendant had been actually attached, or whether, on the contrary, the

efforts of the marshal had been of no avail because it had turned out after all that the defendant did not own the stock he was supposed to own in the said corporation?

"The fact that the marshal, after the edicts had been published and the defendant had entered his special appearance, amended his certificate of service by specifying the stock attached by him, is, in our judgment immaterial.

" 'Therefore, it is necessary to show properly that the order of attachment had been executed, that the writ was effectual, that the attachment was a reality, before the court acts to make it effectual. Otherwise, the structure raised will fall, as in the present case, for want of support.' *Cosme* v. *Santi, supra*.

"The amended certificate of service made by the marshal of Arecibo on September 3 does not validate, in our judgment, an attachment that had not been levied upon any specific piece of property, since the only purpose of said amended return was to specify the stock that turned out to be registered in the name of the defendant on the books of Central Cambalache. Nowhere does it appear that the marshal had levied any attachment specifically upon the stock in question or that he had notified in this respect the head of the corporation."

The plaintiffs appealed, and although both they and the defendant argue in their respective briefs the several questions raised in the motion to set aside the service by publication, we think that the only issue before us is the legal sufficiency of the grounds relied upon by the lower court for its declaration that the attachment is ineffectual, to the exclusion of all other issues raised by the defendant, which were decided in favor of the plaintiffs and consented by the defendant by his failure to appeal.

We agree with the lower court that "in a personal action against a defendant who resides beyond the territorial limits of the State, the service by publication is ineffectual unless prior to the order directing the service by publication an attachment is levied on property of the defendant situated within the State where the court is located."

"Except in cases affecting the personal *status* of the plaintiff, and cases in which that mode of service may be considered to have

been assented to in advance, as hereinafter mentioned, the substituted service of process by publication, allowed by the law of Oregon and by similar laws in other States, where actions are brought against non-residents, is effectual only where, in connection with process against the person for commencing the action, property in the State is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem.*" *Pennoyer* v. *Neff,* 95 U. S. 714, 733; 24 L. Ed. 565.

The jurisdiction in such cases derives from the sovereign power of the State over every property lying within its territorial limits. Where there is no property belonging to the nonresident defendant, the courts of such State would have no basis on which to act.

". . . . It is in virtue of the State's jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the State, there is nothing upon which the tribunals can adjudicate." *Pennoyer* v. *Neff, supra,* p. 723.

We will not go into the question of whether or not the original return was sufficient proof that the marshal had actually levied an attachment on all the shares of stock of the defendant registered in his name on the books of Central Cambalache. We consider it unnecessary to pass upon such question, because even assuming that the original return was defective, it appears from the record that about two months before the court made its order of November 9, 1937, that is, on September 13 of that year, the marshal filed an amendment to the original return. In this amended certificate he adds and certifies that he had attached the stock mentioned therein. The doubt formerly entertained as to whether or not the defendant was a stockholder of Central Cambalache,

Inc., disappeared. It was no longer a case of an attachment upon ". . . . . any stock that the defendant *might own,*" but of 245 2/10 shares of stock stated to be owned by him and which had previously been attached. However, the court thought that such an amended certificate was insufficient to clothe it with jurisdiction, on the ground that it had been filed subsequent to the publication of the summons and the special appearance of the defendant.

However, the court overlooks the fact that jurisdiction is conferred upon it by the attachment actually made and not by the return of the marshal.

"There is no controversy as to the fact that the service was defective, and the defendants admit at least that the return failed to show properly the age of the person who made the service or that he had no interest in the litigation; but the appellees, undoubtedly relying on the jurisprudence established in *Buonomo* v. *Succession of Juncos,* 28 P.R.R. 380, and *López* v. *Quiñones,* 30 P.R.R. 317, introduced evidence *aliunde* to show that the requisites omitted from the return had been complied with at the time of serving the summons on the defendants (here plaintiffs), fulfilling all of the requirements of section 92 of the Code of Civil Procedure (sec. 5076, Comp. 1911)." *Ortiz et al.* v. *San Miguel,* 34 P.R.R, 222, 223.

The amended return clearly shows that the shares of stock had been all the time under the attachment, but that the marshal omitted to state the particulars so showing in the original return. And as the court below had all such particulars before it by reason of the amended return prior to its making the order appealed from herein, we think that it erred in failing to give legal effect to the amended return, especially since the facts therein set forth were not controverted in any way by the defendant.

"If the return upon the summons or other writ designed to give the court jurisdiction over the person of the defendant is omitted, or incorrectly made, but the facts really existed which were required to give the court jurisdiction, the weight of authority at the present time permits the officer to correct or supply his return until it states

the truth, though by such correction a judgment apparently void is, made valid.'' Freeman on Judgments, fourth edition, section 89 *b*, cited in *Cunningham* v. *Spokane etc. Co.*, 72 Am. St. Rep. 113, 115.

That the court had power to allow the amendment to the original return clearly appears from sections 7, 140 and 142 of the Code of Civil Procedure, which provide as follows:

''Sec. 7. Every court has power:

''       .     .     .     .     .     .     .     .     .

''8. To amend and control its process and orders so as to make them conformable to law and justice.

''Sec. 140. The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, and may, upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow upon such terms as may be just, an amendment to any pleading or proceeding in any other particulars; and may, upon like terms, allow an answer to be made after the time limited by this Code, and also relieve a party, or his legal representatives, from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; . . . .

''Sec. 142. The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.''

The jurisprudence is to the same effect. In 50 C. J. 606, section 360, it is summarized as follows:

''An officer's return of service of process may, as a general rule, be amended to remedy defects therein or to make it conform to the truth, and to the statutory requirements, where such exist. The right to amend is a common-law right in no way dependent upon statute, although frequently expressly declared by statute. Equally amendable are affidavits of service made by private persons, proofs of service by publication, affidavits of service on nonresidents by nonresident officers, and acknowledgments of service. A proposed amendment will not be allowed if it states an untruth, and defendant may contest the truth of the facts sought to be introduced into the return.''

Although it is true that the attachment does not actually appear from the original return, it is also true, as shown by the amended return, that it was actually levied upon defendant's shares of stock enumerated in the latter. And since the return is nothing else but the proof of a fact, —which in the case at bar actually occurred—, the lower court, in our judgment, could and should have attached to the amended document all the probatory value it deserved.

". . . . Jurisdiction did not depend upon the proof of service, but upon the fact that service had been made. When the affidavits of mailing were filed they supported the decree as fully as though of record before its entry. *Herman* v. *Santee,* 103 Cal. 519, (42 Am. St. Rep. 145, 37 Pac. 509); *Heinlen* v. *Heilbron,* 94 Cal. 636, (30 Pac. 8); *La Fetra* v. *Gleason,* 101 Cal. 246, (35 Pac. 765); *Bank of Orland* v. *Dodson,* 127 Cal. 208, (78 Am. St. Rep. 42, 59 Pac. 584.)" *Lindley* v. *Lindley,* 49 Cal. App. 631, 633; 194 Pac. 85.

" '. . . . The return of service might be formal or informal, perfect or imperfect, still, if service were in fact made, the court acquired jurisdiction of the person of the defendant.' So *In re Newman,* 75 Cal. 220, 7 Am. St. Rep. 146, it is said: 'It is the fact of service which gives the court jurisdiction, not the proof of service.'

"The amended affidavit of service which the court allowed to be filed was in all respects in proper form, and showed that the appellant was regularly served with a copy of the summons and complaint. None of the facts stated in the affidavit are controverted, and it must be held, therefore, that from the time of the service the court acquired jurisdiction of the parties to the action." *Herman* v. *Santee,* 42 Am. St. Rep. 145, 147.

". . . . The court declares, in effect, that it is not the service of process which gives courts jurisdiction, but the proof of such service; that if the proof is defective, it is immaterial that the service was perfect; and the proof being imperfect, there is no way in which the judgment can be sustained by showing the facts regarding the service of process as they really existed when it was entered. The very reverse of this we apprehend to be the law. It is the fact of the service of process which confers jurisdiction, and it is a familiar practice in California, as well as elsewhere, when the proof of such service is absent or defective, to permit it to be amended or supplied. The court here says the proof, when so amended or supplied, 'would not operate, by relation, to make that valid which, when entered,

was void.' True, it cannot make valid that which was void. But if the process was served, the judgment never was void. The object of supplying and amending proof of service of process, is not to make void valid, but to make valid valid; or in other words, it is to show the true character of the judgment; that it is not and never was void, as might be inferrred in the absence of proof of the service, but is and ever has been valid." Note to the case of *Reinhart* v. *Lugo,* 21 Am. St. Rep. 52, 56.

What the case of *Pennoyer* v. *Neff, supra,* rejects is that the jurisdiction of the court should be made contingent upon facts to be ascertained *after the cause is tried and judgment is rendered.*

". . . . Its jurisdiction in that respect cannot be made to depend upon facts to be ascertained after it has tried the cause and rendered the judgment." *Pennoyer* v. *Neff, supra,* p. 728.

In the last paragraph of its order the lower court says: "The amended return . . . . does not validate . . . . . the attachment . . . ., since the only purpose of said amended return was to enumerate the stock that turned out to be registered in the name of the defendant . . . . . Nowhere does it appear that the marshal had levied any attachment specifically upon the stock in question . . ."

We think that the amended return is clear in this respect. The marshal says: ". . . . that the above shares of stock attached by me are as follows: . . . . ." There is no doubt that the attachment was levied.

In the case at bar, as already stated, the court had before it the information that had been omitted in the original return for about two months before making the order of November 9, 1937; and since it appears from it as a matter of fact that an attachment had actually been levied upon certain shares of stock of Central Cambalache, Inc., which belonged to the defendant, the order should be reversed and the case remanded to the district court for further proceedings not inconsistent with the terms of this opinion.

Mr. Justice De Jesús took no part in the decision of this case.